United States District Court      Southern District of Texas

| | | |
|---|---|---|
| Pillar Panama, S.A., | § | |
|     Plaintiff, | § § § | |
| versus | § | Civil Action H-07-1922 |
| Francis DeLape, et al., | § § § | |
|     Defendants. | § § | |

## Opinion on Summary Judgment

1. *Introduction.*

Two Panamanian companies are disputing ownership of shore property in Panama. One company has sued the other, its officers, and affiliates for a variety of common-law and statutory claims. The complaints are all derived from the title dispute, and it must be heard in Panama. The secondary claims are wrong because they are simply hyper-pleaded shades of the title problem and because they are misbegotten if taken on their face.

2. *The Land.*

Theobald, Inc., claimed that it owned tract 122 on Panama's Bastimentos Island. Perlito Narvise sued Theobald for fifty acres of it, known as Polo Beach. Narvise lost. Years later, Theobald sold the land to Pillar Panama, S.A., and it granted the property to its subsidiary, Bastimentos Holdings, S.A. Bastimentos claims the eastern beachfront through its title from Theobald.

The central part of the island's north coast is occupied by three tracts. First, Red Frog, Inc., owns the western part. In the middle is Polo Beach-Narvise, and the east part is known as the Cayman Beach – Duff-Peters land.

Semper Fidelis Development, S.A., claims Cayman Beach. Tres Cruces de Oro, S.A., claims Polo Beach. Both of those companies are subsidiaries of Landbridge Holdings. It was once named Cinco Cruces de Oro, S.A.

Bastimentos Holdings is contesting the titles of Semper Fidelis and Tres Cruces to the eastern two-thirds of the beachfront – the Polo and Cayman beaches.

In 2003, Pillar began building resort homes jointly with a developer named Red Frog, Inc., on the beachfront. They are developing land owned by Red Frog, tract 121, and, they plan to develop the Polo and Cayman beachfront. The title of the beach is the crux of this litigation.

3.  *Title.*

Pillar says it "negotiated" to buy the Red-Frog parcel to add to its parcel 122. In May of 2007, a Panamanian authority – mayor's office in Bocas del Toro – found that Narvise rather than Pillar owns Polo Beach. Narvise sold his interest to Landbridge's Tres Cruces. Landbridge's Semper Fidelis owns the 150 acres of Cayman Beach.

Six Diamond Resorts International and Landbridge have jointly ventured to develop the 200 acres into a resort.

Francis DeLape owns fifty percent of Landbridge and fifteen percent of Six Diamond. DeLape also owns Benchmark Equity Group, Inc., a real estate firm that has no interest in the disputed properties, although Pillar has sued it along with Six Diamond. Richard Kiibler works for Benchmark.

Pillar says it owns the Polo and Cayman beaches, all 200 acres. The title claims are pending in Panama.

4.  *Pillar's Problems.*

Pillar says it was forced to stop developing the beach because Benchmark and Six Diamond falsely told Red Frog and potential customers that it did not own the land. For asserting their claims to the land, Pillar says that the defendants – Benchmark, Six Diamond, DeLape, and Kiibler – slandered it, interfered with its current and prospective contracts, falsely designated its lands as theirs, and unfairly competed. Pillar has also claimed that the defendants converted its property by trespassing on its land.

The firms have moved to dismiss for want of jurisdiction and for want of a viable congruence of facts and law against them.

5.  *Trespass.*

Pillar says that the firms entered its beachfront property without its permission. Whether their entry without Pillar's permission was lawful depends on the issue of title.

Trespass is a local action, and it may only be tried in the jurisdiction of the land. *See* Tex. Civ. Prac. & Rem. Code § 15.01; *see also* Benjamin L. Shipman, Common Law Pleading § 258 (3d ed. 1923). Because the contested beach is in Panama, this court has no jurisdiction of a trespass on it.

After being taught this rudimentary concept at an earlier hearing, Pillar has withdrawn its trespass claim against the defendants. *See* Pillar Panama Resp. to Supp. Mem., dkt. no. 56 at 27-28.

6. *Conversion.*

Pillar's claim of conversion is likewise deficient in substance and law. Pillar says that when the defendants trespassed on the beachfront, they converted it. By definition, conversion is the wrongful possession of personal property – not real property. *See Rodriguez v. Dipp*, 546 S.W.2d 655, 658 (Tex. App. – El Paso 1977, writ ref'd n.r.e.); *see also* Prosser, Torts § 15 (4th ed. 1971); *and* Restatement (Second) of Torts § 222A (1965).

Conversion under common law also does not protect an intangible asset, including trademarks, business goodwill, or customer relationships. Even if it did, Pillar has recently stipulated that the defendants not infringe on its trademarks. *See* Pillar Stipulation regarding Infringement of Trademarks, dkt. no. 48.

Like trespass, Pillar has now dropped its conversion claims, demonstrating that it had no factual or legal foundation for its splatter of legal theories. *See* Pillar Panama Resp. to Supp. Mem., dkt. no. 56 at 27-28.

7. *Slander.*

Pillar next says that its reputation was damaged because the defendants falsely said things about: (a) who owns the beachfront, (b) how Pillar's project would be financed, and (c) its intention to complete development. Observations and guesses about another's intentions are not facts; a listener knows that the speaker is speculating, making reliance unreasonable. They are also statements about future potential, making them not facts but predictions. *See A.H. Belo Corp. v. Rayzor*, 644 S.W.2d 71, 79 (Tex. App. – Fort Worth 1982)(holding that the publication of a false, derogatory statement of fact rather than opinion is essential).

*A.     Partner.*

Assuming that Kiibler told Pickard that it would not complete development, Pickard is a principal of the Red Frog-Pillar development; therefore, telling him something false and bad about his own business is not publication, a prerequisite for defamation. He may have been insulted, but neither his business nor he were defamed. *See generally Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995)(explaining that publication to a third party is necessary for defamation liability).

*B.     Customers.*

Pillar says three customers and its business partner have been negatively affected by the slander. Pillar has furnished affidavits of two of the three customers. It has no testimony from its customer, Tommy Short.

For Tommy Short, Pillar claims that Kiibler approached him to tell him that Pillar did not own the land that it was going to develop. Pillar's third-hand account of Kiibler's conversation with Short is sales talk or business gossip – not the apparently reliable data of slander. *See e.g., Westfall v. GTE North Inc.*,   1996 U.S. Dist. Lexis 18354 (N.D. Tex. 1996)(holding that gossip is not a statement of fact to impose defamation liability).

Michael Hooks says that he approached DeLape to ask about Landbridge's beachfront property. Hooks recalls that DeLape claimed ownership of the beach, but he also said that DeLape did not know what land Red Frog owned. *See* Hooks Aff. at ¶ 4. DeLape's assertion is neither derogatory nor false; he only told Hooks what he owned – Landbridge's acquisition of Polo Beach. Hooks admitted that Pillar was never mentioned in the conversation.

Pillar says Hooks is now concerned because of his conversation with DeLape. DeLape did not slander Pillar when he promoted his own project in response to questions from a consumer. Hooks was selecting a place to invest; after all, by talking to DeLape, Hooks says "it made me wonder if Mr. DeLape could deliver a better house or a better price or a better location." *See* Hooks Aff. at ¶ 5. This is not defamation; it is capitalism.

Gregory Kubilins is the third customer. He met DeLape at a bar in Panama. Kubilins said that they talked about DeLape's investment at Polo Beach. Kubilins, on his own, inferred that Polo Beach was a part of the Red Frog project. *See* Kubilins Aff. at ¶ 4.

Kubilins says that he became apprehensive of buying a unit because DeLape was telling him of his plans to build an eight-story condominium building. Kubilins thought that it would

be an aesthetically displeasing neighbor. *See* Kubilins Aff. at ¶ 7. Kubilins's reservation whether to buy at Red Frog was a consequence of development plans rather than misstatements about Pillar. DeLape may talk about his own project in Panama; while his plans may be unattractive, they are not derogatory toward anyone else.

Red Frog is not a party. Pillar asserts that, because it is in a venture with Red Frog, its injuries are Pillar's too. If that were true, the injury to Red Frog is a little confusion in the market about who is doing what; this is not slander. None of the defendants is obliged to make life easy for Pillar by keeping their mouths shut.

Lastly, even though it was not pleaded, Pillar may be attempting to make a claim of business disparagement. Its allegations of general, vague insults, however, do not substantiate that claim. *See Hurlburt v. Gulf Atlantic Life Insurance Co.*, 749 S.W.2d 762, 766-767 (Tex. 1987).

### C. Commission Filing.

Pillar says that Six Diamond slandered it in the 8-K report that Six Diamond filed with the Securities and Exchange Commission. It offers these statements in the filing as defamatory: (a) Six Diamond owns about 200 acres in Panama in the archipelago of Bocas del Toro, and (b) it intends to develop this property under the name of Playa Diamante. *See* First Am. Compl. at ¶ 23(L). Further, Six Diamond has disclosed – in neutral, non-defamatory terms in the filing itself – that a "third-party" is claiming an interest in the land. Without identifying Pillar in the filing, it did not publish about Pillar. Critically, Pillar cannot be slandered by Six Diamond's saying that he is doing what he is doing. Simply, Six Diamond has disclosed that it will develop Polo and Cayman beaches under the trade name of Playa Diamante and that it has a contested title. Both are true.

The statements in Six Diamond's report to the commission are privileged. *See Vanderkam v. Clarke*, 993 F.Supp. 1031, 1032 (S.D. Tex. 1998)(an attorney's report on securities dealings is privileged when part of judicial proceeding); *see also Carnegie Int'l Corp. v. Grant Thornton, LLP*, 2006 WL 990960 (Md. Cir. Ct. Mar. 30, 2006)(information in 8-K was privileged from defamatory liability); *and* Restatement (Second) of Torts § 592A (1977).

### 8. Contract Interference.

Pillar says that, because the defendants' contest of title to the property, they have interfered in its relationships with its current and prospective clients. Pillar has alienated

whatever title it had to the beachfront. His interest in the title is secondary as a joint venturer in its development. Pillar cannot isolate itself from competition – not from competition for title, customers, labor, supplies, and the rest.

Pillar has not identified a contract or profit that it has lost. Pillar has only identified two "customers;" one of whom, Hooks, contacted DeLape. DeLape cannot be liable for interference when Hooks approached him. The other customer, Kubilins, who met DeLape at a bar, listened to DeLape talked about his own project, told him that he had no idea what Red Frog owned, and never mentioned Pillar's name. If anything, DeLape's conversation only benefitted Kubilins to check the land title before buying property – a tip that any non-sophisticated, non-competing person could have given him.

All of Pillar's complaints are derived from the title dispute.

Buried in all of these vague posturings is a hint of a claim for slander of title. Pillar does not own the land. Pillar did not lose an identifiable sale of the land because of a false assertion about defects in its title. A conflicting claim is not a slander. *See Humble Oil & Refining Co. v. Luckel*, 171 S.W.2d 902, 905-906 (Tex. App. – Galveston 1943)(when a party has a reasonable belief of title, the element of malice in a title of slander suit is not met).

9.  *Unfair Competition.*

Grounds of unfair competition in Texas are misappropriation of another's product and infringing a trademark. Pillar has abandoned that the defendants infringed its trademarks.*See* Pillar Stipulation regarding Infringement of Trademarks, dkt. no. 48. Pillar has not created a product that can be misused.

10. *Lanham Act.*

Pillar claims that its customers have been confused because the defendants have falsely designated the contested land as theirs in promotions. The essence of Lanham's ban is on things that were counterfeit, not adversely claimed.

The Lanham act only applies to goods and services – not land. Pillar says that when the firms told its customers that they do not have the funds to completely develop Red Frog, they misrepresented its ability to deliver "development services." A statement about under funding or ineptness is about a business condition rather than the origin of a particular service. The Lanham act does not apply to Pillar's position.

11.  *Jurisdiction.*

After filing three complaints averaging twenty-five pages each and having two four-hour hearings, Pillar has yet to articulate a viable cause of action against the defendants.

The heart of this matter is a title dispute where the land is outside the United States, and the disputing entities are Panamanian corporations. Aside from baseless claims and no personal or subject jurisdiction, Pillar did not establish that Texas is a more convenient forum for land located in Panama.

Panama law governs this matter, and its courts have more jurisdiction and have more convenience.

12.  *Conclusion.*

Having no viable claim and having no jurisdiction, Pillar Panama, S.A., will take nothing from Benchmark Equity Group, Inc., Six Diamond Resorts International, Francis DeLape, and Richard Kiibler. On the defendants' prayer for sanctions and attorney's fees, a hearing will be held on May 1, 2008.

Signed on May 1, 2008, at Houston, Texas.

Lynn N. Hughes   USDJ
United States District Judge